(No. 73425.—

*In re* APPLICATION OF THE COUNTY COLLECTOR FOR DELINQUENT TAXES, FOR AT LEAST FIVE YEARS PRIOR TO 1987 (J&J Partnership, Appellant, v. Laborers' International Union Local No. 703, Appellee).

*Opinion filed July 22, 1993.*

HARRISON, J., joined by HEIPLE, J., dissenting.

Stephen J. LeSueur, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

Thomas E. Johnson, of Johnson & Ryan, of Urbana, for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

The property owner in the present case failed to pay its local property taxes for a number of years and eventually saw its property sold at a scavenger sale for $70. The owner later received a certificate of redemption from the county clerk after reaching a compromise agreement with the State's Attorney and county officers regarding the amount that would be necessary to redeem the property from the sale. The circuit court of Champaign County ruled that the property owner's redemption was invalid and issued a tax deed to the purchaser. The appellate court reversed, holding that the redemption was valid. (225 Ill. App. 3d 741.) The

purchaser appeals (134 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The facts in this case are not in dispute. The property involved is a parcel of real estate located in Champaign. The property owner, Laborers' International Union Local No. 703, failed to pay taxes on the property for the years 1974 through 1979. In May 1988, the Champaign county treasurer, as *ex officio* county collector, obtained a judgment for sale of the property, and it was sold at a scavenger sale later that month. J&J Partnership purchased the property at the sale for $70. At the time of the sale, Local 703 owed a total of $15,330.24 in unpaid property taxes, interest, and costs. J&J Partnership filed a petition for issuance of a tax deed on October 20, 1988. During the redemption period, however, Local 703 eventually reached an agreement with the Champaign County State's Attorney, the county clerk—who initially opposed settlement—and the county treasurer regarding the amount that would be necessary to redeem the property. Under the agreement, Local 703 was to pay the county clerk a total of $7,147.42. According to an itemization appearing in the record, the amount of the settlement represented the sum of the following: taxes, penalties, and interest of $6,763.86, J&J's bid of $70, and fees and costs, including interest on the bid, of $313.56. Upon receiving payment of the settlement amount, the county clerk issued a certificate of redemption to Local 703 on January 20, 1989. The redemption period was to have expired the next month.

J&J Partnership filed an amended petition for issuance of a tax deed on December 7, 1989. In the amended petition, J&J challenged the property owner's purported redemption from the scavenger sale and asked the circuit court to invalidate the certificate of redemption that had been issued to the property owner. Local 703 moved to dismiss the amended petition, asserting that its certif-

icate of redemption was valid. The trial court denied the dismissal motion and later, on March 22, 1991, ordered that a tax deed be issued in J&J's favor. The trial court denied the property owner's subsequent motion for reconsideration but stayed the judgment pending appeal.

The appellate court reversed. (225 Ill. App. 3d 741.) The appellate court agreed with the property owner that the State's Attorney, as legal representative of the county, was authorized to compromise the amount necessary to redeem the tax-delinquent property. Accordingly, the appellate court ruled that Local 703's redemption from the scavenger sale was valid and that J&J was not entitled to issuance of a tax deed. We allowed J&J's petition for leave to appeal (134 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The principal issue before us concerns the validity of the property owner's purported redemption from the scavenger sale. J&J Partnership contends that the property owner could not validly redeem its property from the scavenger sale without paying the full amount of the tax delinquency, including all delinquent taxes, interest, penalties, and costs. As we have stated, Local 703 redeemed its property from the sale by paying $7,147.42, though at the time of the sale the tax delinquency was more than twice that amount. J&J contends further that the State's Attorney was not authorized to compromise the amount necessary to effect a valid redemption and that the redemption certificate issued to the property owner must therefore be deemed invalid.

The Revenue Act of 1939 provides a comprehensive series of provisions governing the collection of taxes and the enforcement of tax judgments; when necessary, the Act gives effect, as it must, to the requirements of the Illinois Constitution regarding tax sales (see Ill. Const. 1970, art. IX, §8). The scavenger sale is a measure of last resort, and is designed to restore the subject prop-

erty to tax-paying status after "other available methods of tax collection have been exhausted." (*In re Application of Rosewell* (1983), 97 Ill. 2d 434, 442-43.) For the period in question here, section 235a, also known as the Scavenger Act, provided for the disposition of tax-delinquent property at a scavenger sale if taxes had been delinquent for five or more years. The period of delinquency necessary to trigger a scavenger sale has since been shortened to two years. (Ill. Rev. Stat. 1989, ch. 120, par. 716a (providing for the sale "of all tracts of lands and lots upon which all or a part of the general taxes for each of 5 or more years until June 30, 1988 or 2 or more years on and after July 1, 1988 are delinquent").) Unlike bidders at the annual tax sale, bidders at a scavenger sale are not required to offer the amount of delinquent taxes owed by the owner at the time of the sale. (Compare Ill. Rev. Stat. 1989, ch. 120, par. 716 (court to order sale of "the several tracts or lots of land, or so much of each of them as shall be sufficient to satisfy the amount of taxes (and special assessments, if any), interest, penalties and costs annexed to them severally"), with Ill. Rev. Stat. 1989, ch. 120, par. 716a (at a scavenger sale, property is sold to the highest bidder, "notwithstanding the bid may be less than the full amount of taxes, special taxes, special assessments, interest, penalties and costs for which judgment has been entered"). See *First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 229-30.) The owner of property being sold at a scavenger sale may not bid on it. Ill. Rev. Stat. 1989, ch. 120, par. 716b.

Section 235a of the Revenue Act of 1939 provides, in pertinent part:

> "For sales taking place after January 1, 1980, notwithstanding any other provision of this Section, except for single family residential units being owner-occupied condominium units, cooperative units or dwellings, the

amount required to be paid for redemption shall also include an amount equal to all delinquent taxes on such property which taxes were delinquent at the time of sale. Such delinquent taxes shall be apportioned by the county among the taxing districts in which such property is situated." (Ill. Rev. Stat. 1989, ch. 120, par. 716a.)

The property at issue was not improved with an owner-occupied single-family residential unit, so the exception contained in the provision has no application here.

Relying on the provision quoted above, J&J argues that a redemption occurring in the wake of a scavenger sale can be accomplished only by payment of the entire amount of the tax delinquency, together with all penalties, interest, and costs owed at the time of the sale. In the present case, J&J contends, the requisite sum would be the amount originally specified in the judgment for sale, or $15,330.24. This figure represented the sum of $6,763.86 in unpaid taxes for the years 1974 through 1979, $8,553.58 in interest and penalties, and $12.80 in costs. As we have seen, the settlement agreement permitted the property owner to redeem its property from the scavenger sale by tendering roughly half that amount.

As a preliminary matter, we consider a narrow contention raised by the property owner that, if accepted, would be dispositive of the present appeal. Local 703 suggests that the amount of "delinquent taxes" that must be paid pursuant to the redemption provision of section 235a is limited to the taxes imposed for the years in question and does not include any interest or penalties on those sums. In the present case, the redemption certificate issued to Local 703 states that of the $7,147.42 settlement amount, $6,763.86 represents the "Amount of Taxes Held in Forfeiture Plus Penalties and Interest." Notwithstanding the reference to penalties and interest, however, it appears that the figure of $6,763.86 equals

the sum of taxes imposed but unpaid for the years in question, exclusive of any penalties or interest. For these reasons, the property owner argues that it fully complied with the requirements of section 235a by paying an amount equal to the back taxes—without penalties or interest—it owed. We do not agree.

While the present case involved a settlement between the property owner and the State's Attorney, adoption of Local 703's interpretation of the redemption provision would mean that a property owner, in every instance, would have an enforceable right to redeem its property from a scavenger sale simply by tendering the sum of the taxes that were actually payable during the years in question, without regard to any penalties or interest on those amounts. We do not believe that the legislature intended to grant property owners that right. The Revenue Act defines the terms "tax" and "taxes" as including "[a]ny tax, special assessments or costs, interest or penalty imposed upon property." (Ill. Rev. Stat. 1989, ch. 120, par. 482(11).) Thus, the "delinquent taxes" that must be paid pursuant to the redemption provision of section 235a include, by definition, not only the amounts assessed as taxes during the years in question, but also interest and penalties that have accrued on those sums.

Other provisions of the Revenue Act also militate against the property owner's interpretation of this portion of section 235a. As the trial judge noted in rejecting the same argument, section 216 of the Revenue Act provides that back taxes, "together with all penalties, interests and costs," are "a prior and first lien" on the subject property until those sums are paid, or until the property is sold under the terms of the Act. (Ill. Rev. Stat. 1989, ch. 120, par. 697.) Consistent with that provision, we do not believe that the legislature intended to grant to property owners an enforceable right to redeem property from a scavenger sale by paying a sum that

does not include the full amount of back taxes, penalties, interest, and costs. For these reasons, we must reject the property owner's contention that, without regard to the State's Attorney's authority to compromise the amount required for redemption, it has already complied with the literal terms of the redemption provision of section 235a.

Our resolution of this initial question means only that a taxpayer does not possess an enforceable right under the statute to redeem property from a scavenger sale by tendering an amount that is less than the entire tax delinquency owed at the time of sale. We must now consider whether the State's Attorney, as the county's legal representative, is authorized to reach a compromise agreement with the property owner regarding that amount.

J&J Partnership contends that the redemption provision found in the Scavenger Act is a mandatory measure that cannot be compromised by the State's Attorney. J&J notes that various avenues exist for property owners who wish to object to their tax liabilities. For example, a property owner may pay its taxes under protest, avoiding a sale while the protest is pending. (Ill. Rev. Stat. 1989, ch. 120, par. 675.) Alternatively, after a sale, a property owner may redeem its property under protest. (Ill. Rev. Stat. 1989, ch. 120, par. 734.) In either case, the property owner is afforded the opportunity to raise certain objections to the taxes imposed on it. J&J notes further that the Scavenger Act does not expressly authorize the State's Attorney to compromise the amount necessary for redemption, in contrast to the payment-under-protest procedure, which explicitly grants the State's Attorney authority to compromise and settle tax objections with property owners. (Ill. Rev. Stat. 1989, ch. 120, par. 675a; *Channahon Park District v. Bosworth* (1986), 145 Ill. App. 3d 820; *People ex rel.*

*Thompson v. Anderson* (1983), 119 Ill. App. 3d 932.) J&J interprets the absence of a similar provision from the Scavenger Act to mean that the legislative drafters intended to deny local taxing authorities the power to compromise and settle tax disputes after a scavenger sale.

We do not agree with J&J that the redemption provision contained in the Scavenger Act limits the State's Attorney's authority, following a scavenger sale, to compromise with the property owner on the amount that would be necessary at that time for a valid redemption. The provision at issue took effect in 1980, and its language was later clarified by further amendment. (See *First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 231-32, 235-36; *In re Application of Rosewell* (1983), 97 Ill. 2d 434, 445-46.) The provision was intended to prevent property owners from having the right to reacquire title to their property after a scavenger sale by paying less than the amount of taxes they owed. (*Rosewell*, 97 Ill. 2d at 445-46.) Prior to that time, a property owner could redeem its property from a scavenger sale simply by paying an amount equal to the purchaser's bid, together with interest on that sum. (*First National Bank*, 98 Ill. 2d at 230-31.) Because a successful bid at a scavenger sale may be for less than the amount of taxes owed, a redeeming owner could regain his property by tendering an amount substantially less than the amount of the outstanding tax delinquency.

Discussing the legislative action that led to the enactment of the redemption provision found in section 235a, our court has stated:

"This shows a determination by the legislature to deal with the problem of the permitted evasion of taxes by owners of tax-delinquent property and of the unwitting fostering of urban blight by deficiencies in the Scavenger Act. The 1980 amendment to the Act obviously was de-

signed by the legislature to end the incredibly permitted practice of allowing tax-delinquent owners to re-acquire their own property free of forfeitures and tax liens following a sale under the Scavenger Act without satisfying their tax indebtedness." *Rosewell,* 97 Ill. 2d at 445.

As the *Rosewell* court explained, the plain purpose of the amendment was to deny to property owners an enforceable right to redeem from a scavenger sale by tendering an amount less than the entire tax delinquency at the time of the sale. This does not mean, however, that the legislature intended to deny local authorities the option of compromising the necessary amount, if they should choose to do so.

J&J correctly observes that the Scavenger Act does not expressly authorize the State's Attorney to negotiate with property owners regarding redemptions from scavenger sales. We do not consider that an express grant of authority in the Revenue Act is necessary, however, for we believe that other sources of authority sustain the action taken by the State's Attorney here.

Section 3—9005 of the Counties Code, regarding the duties of the State's Attorney, provides in pertinent part:

"The duty of each State's attorney shall be:

(1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned.

(2) To prosecute all forfeited bonds and recognizances, and all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State or his county, or to any school district or road district in his county; ***.

(3) To commence and prosecute all actions and proceedings brought by any county officer in his official capacity.

(4) To defend all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county.

\* \* \*

(7) To give his opinion, without fee or reward, to any county officer in his county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned.

\* \* \*

(12) To appear in all proceedings by collectors of taxes against delinquent taxpayers for judgments to sell real estate, and see that all the necessary preliminary steps have been legally taken to make the judgment legal and binding." Ill. Rev. Stat. 1989, ch. 34, par. 3—9005.

We believe that the duties of the State's Attorney, as described in section 3—9005 of the Counties Code, are sufficiently broad to confer on that officer ample authority by which to compromise the amount that must be paid to effect a valid redemption following a scavenger sale. The first four provisions quoted above grant the State's Attorney general authority to prosecute and defend criminal and civil actions concerning the county and county officers. Section 3—9005(7) of the Counties Code additionally provides authority for the State's Attorney to consult with and advise county officers on matters of public interest. Finally, section 3—9005(12) specifically authorizes the State's Attorney to appear on behalf of the county collector in proceedings for the sale of tax-delinquent real estate.

The trial judge considered section 3—9005(12) and found that it was not applicable to the present case, noting that the present proceeding was one initiated by the purchaser for the issuance of a tax deed, rather than one initiated by the collector against a delinquent property owner. We believe that the trial judge interpreted the provision too narrowly. The purchaser's petition for a tax deed was predicated, of course, on the earlier judgment for sale entered against the subject property, in which the State's Attorney represented the county col-

lector. We believe that, through his actions on behalf of the county clerk and county collector, the State's Attorney in the present case was authorized to reach an agreement with the property owner regarding its tax liability, including a compromise of the amount necessary to effect a redemption of the subject property from the scavenger sale. Our decisions have characterized the role of the State's Attorney as executive in nature (see *People ex rel. Daley v. Suria* (1986), 112 Ill. 2d 26, 36-38; *People ex rel. Daley v. Moran* (1983), 94 Ill. 2d 41, 45-47; see also *Ingemunson v. Hedges* (1990), 133 Ill. 2d 364, 370), and our result in the present matter is consistent with those precedents.

As we have explained, the redemption provision found in section 235a was designed to prevent property owners from asserting an enforceable right to redeem their property from a scavenger sale by tendering less than the full amount of the tax delinquency at the time of the sale. We do not believe, however, that the legislature also intended to deny the State's Attorney the authority to reach an agreement with the property owner for payment of a lesser sum, if that officer should conclude, as a discretionary matter, that such an agreement is in the best interests of all concerned. Of course, the funds obtained through the agreement would be treated in the same manner as the proceeds of a redemption made in strict compliance with the terms of section 235a. Thus, the compromise agreement reached by the State's Attorney and Local 703 quickly garnered for the taxing authorities in Champaign County substantially more money than they would have enjoyed had they been limited to J&J's $70 bid alone. As the redemption provision in section 235a states, redemption proceeds are to be divided among the various taxing bodies, after payment to the bidder of the amount of its bid and interest on that sum. Appropriately, then, the "additional money

collected [from a redemption under section 235a] is not to be distributed to the certificate holder (as redemption money would normally be distributed), but rather, it is to be distributed to the taxing districts as a tax collection." (Turano, *Redemption from Tax Sales in Illinois—Confusion Galore*, 23 J. Marshall L. Rev. 107, 110 (1989).) Here, the State's Attorney was able to recover for the taxing bodies a much greater sum than would have been immediately available if no redemption had occurred.

To be sure, a property owner who does not redeem its property from a scavenger sale remains personally liable for the difference between the amount of the tax delinquency and the amount of the successful bid. (Ill. Rev. Stat. 1989, ch. 120, par. 716a.) But, in an appropriate case, the State's Attorney can save substantial time and money by settling with the property owner and avoiding the time and expense of further litigation. We do not believe that the legislature intended to deprive the local authorities of this important option. Thus, while the redemption provision of section 235a denies the property owner a right to redeem from the sale for an amount less than the tax delinquency, it does not deny the State's Attorney, as the legal representative of the county, the authority to agree to settle the matter upon payment of a lesser sum.

For these reasons, we discern in the Revenue Act of 1939 no intent to preclude the county from pursuing settlement agreements with property owners and taxpayers, if no prejudice accrues to the purchaser at the scavenger sale. Here, J&J received the amount it was entitled to receive upon the owner's valid redemption, and is no worse off now than it would have been if Local 703 had redeemed its property by tendering the full amount of the tax delinquency, including all interest, penalties, and costs. Bidding on property at a scavenger sale is, of course, a speculation on whether the property

owner will ultimately redeem the subject property and thus prevent the bidder from realizing the hoped-for, and often substantial, gain. Like all speculations, this is not without financial risk. If a redemption occurs, the bidder is entitled to be repaid the amount of its bid, but the bidder must absorb certain other costs, such as attorney fees, that cannot be recovered from the redeeming owner.

Having concluded that the State's Attorney was authorized to settle the matter with the property owner after the scavenger sale, we must reject J&J's additional argument that it was improperly denied an opportunity to object to the settlement agreement prior to its execution by the parties. As the appellate court noted, the State's Attorney was representing the county clerk and county collector in these proceedings, not the scavenger sale purchaser. (225 Ill. App. 3d at 746.) Accordingly, the State's Attorney was not required to consult with the purchaser prior to settlement.

For the reasons stated, the judgment of the appellate court, reversing the judgment of the circuit court of Champaign County, is affirmed.

*Judgment affirmed.*

JUSTICE HARRISON, dissenting:

I disagree with the majority's conclusion that the State's Attorney had authority to compromise the county's tax claim by virtue of section 3—9005 of the Counties Code (Ill. Rev. Stat. 1989, ch. 34, par. 3—9005). That statute does enumerate various powers and duties of State's Attorneys, but compromising tax indebtedness following scavenger sales is not among them. This leaves the majority to posit that the authority to effectuate such compromises somehow emanates from the statutory powers and duties which are specified. In my view, however, such a position springs more from hope than rea-

son, for the power to compromise a taxpayer's indebtedness after a statutory scavenger sale does not inhere in any of the matters set forth in section 3—9005, nor is it necessary to enable State's Attorneys to perform any of the responsibilities imposed on them by that statute.

Through section 3—9005, the legislature has defined only the general contours of the State's Attorney's obligations. The State's Attorney's specific responsibilities with respect to tax sales are set forth in the Revenue Act of 1939 (Ill. Rev. Stat. 1989, ch. 120, par. 482 *et seq.*). In resolving the matter before us, it is this legislation which controls. As this court has recently reiterated, where there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other of which is particular and relates to only one subject, the particular provision must prevail. (*Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 195.) I can find nothing in the Revenue Act which will countenance the result reached by the majority today.

Section 194a of that Act (Ill. Rev. Stat. 1989, ch. 120, par. 675a) does authorize the State's Attorney to enter into a compromise agreement with a property owner *prior* to a tax sale. In this case, however, the tax sale had already taken place, and the redemption provision of section 235a of the Act (Ill. Rev. Stat. 1989, ch. 120, par. 716a) was thereby triggered. In contrast to section 194a, section 235a does not grant the State's Attorney the power to compromise and settle tax obligations with the delinquent property owner. Under settled principles of statutory construction, this distinction must be given effect, for when a particular provision appears in a statute, the failure of the legislature to include that same provision in another section of the statute will not be deemed to have been inadvertent. *Siciliano v. Village of*

*Westchester Firefighters' Pension Fund* (1990), 202 Ill. App. 3d 964, 967.

The majority attempts to blur the distinction between proceedings before and after a tax sale by noting that in both cases, the delinquent taxpayer is afforded the opportunity to interpose objections. What the majority overlooks is that the objections available to a taxpayer following a tax sale are narrowly circumscribed. Once a tax sale has occurred, the right to contest the tax obligation is lost, with certain exceptions not relevant here. (Ill. Rev. Stat. 1989, ch. 120, pars. 716a, 734, 751.) When the tax purchaser then petitions for a tax deed, as J&J Partnership did here, objections that would have been proper in the original proceeding for judgment and sale for taxes can no longer be raised. The sole issue before the court is whether the statutory conditions subsequent to sale have been performed, specifically, whether the redemption period has expired and whether the requisite statutory notices have been furnished. (See Ill. Rev. Stat. 1989, ch. 120, par. 747; *Young v. Madden* (1960), 20 Ill. 2d 506, 510-11.) In the case before us, neither of these matters was contested. Accordingly, there was no legitimate basis for offering the union a compromise on its full tax obligation.

In *In re Application of Rosewell* (1983), 97 Ill. 2d 434, 445, this court noted that the redemption provision now set forth in section 235a of the Act (Ill. Rev. Stat. 1989, ch. 120, par. 716a) was

> "obviously * * * designed by the legislature to end the incredibly permitted practice of allowing tax-delinquent owners to re-acquire their own property free of forfeitures and tax liens following a sale under the Scavenger Act without satisfying their tax indebtedness."

To what was once so obvious, the majority has now become utterly oblivious. By its action today, it bestows on

the State's Attorney the power to do precisely what the legislature sought to prevent.

In the end, the majority rationalizes this result based on nothing more than its own policy judgment that it was better for the State's Attorney to accept the union's payment of $7,147.42 immediately, rather than honoring J&J's bid of $70 and then bringing an *in personam* action against the union to satisfy the deficiency. I note, however, that this "bird-in-the-hand" approach leaves the taxing bodies with less than half the amount they are owed and no prospect of obtaining more. It also restores to the tax rolls a property owner with an established record of delinquency. Had J&J been allowed to take over, as the statute contemplates, it would have been required to make all future tax payments or risk losing the property itself. Under the majority's scheme, by contrast, the union now has absolutely no incentive for being similarly conscientious. After all, it appears that a deal can always be struck so long as the State's Attorney is willing to go along.

In any event, such policy judgments are not for us to make. The Revenue Act is unambiguous, and nowhere does it authorize the type of compromise reached in this case. We may not rewrite the law to suit our own conception of sound policy. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 220.) Because the State's Attorney had no statutory authority to enter into a compromise agreement with the union, the certificate of redemption issued in reliance on that agreement was invalid, and J&J was therefore entitled to receive the tax deed. Accordingly, I would reverse the judgment of the appellate court and affirm the judgment of the trial court.

JUSTICE HEIPLE joins in this dissent.