**RTC COMMERCIAL ASSETS TRUST 1995–NP3–1, a Delaware business trust, Plaintiff–Appellant,**

v.

**PHOENIX BOND & INDEMNITY CO., et al., Defendants–Appellees.**

No. 97–3243.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1998.

Decided Feb. 17, 1999.

Jill A. Glickstein, Rudnick & Wolfe, Edward S. Weil (argued), Schwartz, Cooper, Greenberger & Krauss, Rodney C. Slutzky, Chicago, IL, for Plaintiff–Appellant.

Stanford D. Marks (argued), Andrew W. Marks, Chicago, IL, for Defendants–Appellees Phoenix Bond & Indemnity Company and Thomas C. Hynes.

Donna M. Lach (argued), Dean M. Victor, Office of State's Attorney of Cook County, Chicago, IL, for Defendants–Appellees Edward J. Rosewell, David Orr, James Houlihan.

Before COFFEY, MANION, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case presents an aspect of the fallout from the savings and loan debacle of the 1980s. On one level, it concerns local real estate taxes on property held by a failed institution, and the liens and penalties associated with those taxes. As a preliminary matter, however, it requires us to decide whether the Tax Injunction Act (TIA), 28 U.S.C. § 1341, precludes the district court from adjudicating some or all of the claims presented. The district court thought that the TIA barred jurisdiction for three out of four counts of the complaint, on the ground that the remedies sought effectively would impair the ability of Cook County, Illinois, to collect taxes. It exercised jurisdiction over a fourth count, which raised the question whether tax penalties could attach to properties held by the Resolution Trust Corporation ("RTC"). RTC Commercial Assets

Trust 1995–NP3–1 ("RTC Trust"), which purchased interests in the property from RTC itself, has appealed both the jurisdictional ruling and the aspects of the court's substantive ruling that were adverse to it.

## I

The facts of the case are uncontested and relatively straightforward. When the Trans-Ohio Federal Savings Bank folded in July 1992, RTC was appointed the bank's receiver pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183. Among the assets the bank then held were two notes secured by interests in six adjoining parcels of land at 185 North Wabash Street in Chicago. The first note secured a loan to the 185 North Wabash Partnership of approximately $904,000 with the assignment of 100% of the beneficial interest in a land trust that held interests in the property. The second evidenced a leasehold mortgage transferred as security for a separate $15,000,000 loan. As receiver, RTC succeeded to TransOhio's interests in the property. On October 24, 1995, RTC assigned those interests to the present plaintiff, RTC Trust.

■ No one had paid the real estate taxes on the property due to Cook County since 1991. On March 1, 1995, the county held a tax sale at which Phoenix Bond & Indemnity Company ("Phoenix") purchased a tax certificate representing the real estate taxes levied against the property for 1993. Later, Phoenix purchased tax certificates for the second installment of the 1991 real estate taxes, all of the 1992 taxes, and the first installment of the 1994 taxes. For the time being, therefore, the county had its tax monies, and it was Phoenix's job to pursue the tax debtor. Complicating matters somewhat is the fact that under Illinois law, if the liens Phoenix acquired under the tax certificates are declared void, it has the right to file a petition in the court that ordered the property sold to have the sale declared a "sale in error." 35 ILCS 200/21–310(b). One of the express grounds for finding a sale in error is that there is "an interest held by the United States in the property sold which could not be extinguished by the tax deed." *Id.*, 21–310(b)(3). Upon such a declaration, the county clerk must refund the amount paid for the property (with interest) and cancel the certificate. *Id.*, 21–310(b), final paragraph. The only person who may bring an action for a refund based on a sale in error is the tax buyer. See *LaSalle Nat'l Bank v. Hoffman*, 1 Ill.App.3d 470, 274 N.E.2d 640, 645 (1971). At this point, however, Phoenix, the buyer, has taken no such action in the Circuit Court of Cook County. Instead, on November 18, 1996, it filed a notice and petition for a tax deed for the property represented by its tax certificates.

RTC Trust responded to Phoenix's petition on March 14, 1997, by filing the present suit in federal court against Phoenix, Thomas Hynes, in his official capacity as Cook County Assessor (for whom we have now substituted James Houlihan, Hynes' successor in office), Edward Rosewell, in his official capacities as County Treasurer and County Collector, and David Orr, in his official capacity as County Clerk (collectively, the "County defendants"). Counts I and II of its claim requested a declaratory judgment under FIRREA to the effect that any tax liens under Illinois law that purported to have attached after RTC acquired the notes are invalid, and thus neither Phoenix nor the County defendants have a valid interest in the property; Count III alleged that, as RTC's assignee, RTC Trust was not obligated to pay any interest or penalties on the liens; and Count IV asserted that, in the event the liens were valid, RTC Trust had the right under FIRREA to challenge any valuation assessments made while RTC held the notes.

■ After an abortive attempt to assert federal question jurisdiction directly under FIRREA (which RTC Trust has now abandoned), the complaint was amended to assert diversity jurisdiction. RTC Trust is a Delaware business trust with its principal place of business in Maryland; all of its equity interest holders, and all partners involved in the holders, are citizens of states other than Illinois. Phoenix is an Illinois corporation with its principal place of business in Illinois, and the County defendants are named in

their representative capacity for Cook County, Illinois. The jurisdictional paragraph of the complaint erroneously alleges that in excess of $50,000 was in controversy—an amount superseded by amendments to § 1332 effective January 17, 1997 raising the amount to $75,000. Nevertheless, read as a whole the complaint clearly indicates that the amount in controversy exceeds $75,000: paragraph 9 sets forth the value of the two mortgage interests at issue, each of which was substantially in excess of the jurisdictional minimum. That is enough to sustain diversity jurisdiction.

The alert reader might wonder why this federal litigation was proceeding at all, since there was apparently a pending state court action in the courthouse several blocks down the street. The abstention doctrine established in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), generally requires a federal court to refrain from adjudicating an action when certain kinds of state court actions are proceeding with respect to the same subject matter, including some civil proceedings. See, *e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). There is nothing about federal preemption claims that prevents a court from considering *Younger* abstention. See *New Orleans Public Serv., Inc. v. New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*NOPSI*). Nevertheless, in a parallel line of cases the Court has recognized that the state may choose not to request *Younger* abstention, and the federal court will respect its preference. See, *e.g.*, *Ohio Civil Rights Comm'n v. Dayton Schools*, 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 479–80, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). Although the State of Illinois itself is not a party here, it appears that neither the Cook County defendants nor Phoenix said a word about *Younger* abstention in the district court. It is quite clear that neither one has raised such a contention in this court. We therefore conclude that it is now too late in the day to consider whether this might have been an appropriate ground for dismissal of the federal action, and we proceed to the issues actually litigated.

As we noted above, the district court granted the defendants' motion to dismiss Counts I, II, and IV for want of subject matter jurisdiction. It concluded that the TIA barred federal jurisdiction because the practical effect of the relief RTC Trust sought would be to impair the county's effort to collect its taxes. It reached the opposite conclusion with respect to its jurisdiction over Count III, because it found that Illinois law does not treat penalties imposed for failure to pay taxes as taxes themselves, and thus the TIA does not apply. On the merits of Count III, the court ruled that RTC Trust was not immune as a matter of law from penalties assessed before RTC was appointed as TransOhio's receiver, but that it was entitled to summary judgment on its claim that it could not be held liable for penalties that accrued after RTC's appointment. RTC Trust has now appealed the ruling under the TIA and the adverse portion of the court's decision on Count IV; there is no cross-appeal.

## II

### A. Tax Injunction Act

In light of the frequency with which tax issues must have arisen in conjunction with RTC's assumption of assets during the course of the savings-and-loan bailout, there is a surprising dearth of case law about the relation between the TIA and FIRREA. The question whether the TIA precludes federal jurisdiction over claims brought not by RTC or a successor federal agency, but by a private-party assignee of the federal government, is one of first impression in this circuit. If the United States were a co-plaintiff, the judicial exception to the TIA for suits brought by the United States to protect itself or its instrumentalities would come into play. See *Arkansas v. Farm Credit Servs. of Central Arkansas*, 520 U.S. 821, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997). Neither the United States itself nor a federal agency is formally before the court, however, and the holding of *Farm Credit Services* is enough to establish

that RTC Trust is too remote from the United States to take advantage of this exception.

We begin by noting that the Supreme Court discusses the effect of the TIA in terms of the jurisdiction of the district court. See, *e.g., California v. Grace Brethren Church*, 457 U.S. 393, 408, 417–18, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). Recently, the Court granted certiorari in *Jefferson County, Ala. v. Acker*, 137 F.3d 1314 (11th Cir.1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 589, 142 L.Ed.2d 532 (1998) (No. 98–10), to consider "[w]hether the District Court had subject matter jurisdiction over this action, in light of the [TIA]." Our discussion therefore proceeds on the assumption that the TIA creates a fundamental bar to the court's subject matter jurisdiction, rather than simply defeating a claim that might have been raised.

The TIA provides that "the district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. In *Grace Brethren Church*, the Supreme Court held that the TIA's withdrawal of federal jurisdiction extends not only to injunctions and their kin, but also to actions for declaratory judgment. *Id.* at 408, 102 S.Ct. 2498. As the Court noted in *Tully v. Griffin, Inc.*, 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976), "the statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Id.* at 73, 97 S.Ct. 219. See generally 17 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4237 at 640–43 (2d ed.1988).

If RTC Trust's suit had been brought only against the County defendants, the potential for conflict with the state's tax collection efforts would have been palpable. Similarly, if it had sued only Phoenix and Illinois law did not provide the right of rescission for "sales in error," it would be equally clear that the TIA had no part to play. In the latter case, Cook County would have its money, and it would be Phoenix's private task to collect whatever it could from the party holding the property. The situation here, of course, falls somewhere in between. We consider first RTC Trust's claims against the Cook County defendants, and then its claims against Phoenix.

1. *The Cook County Defendants*

■ Count I of the second amended complaint makes no demand for either a declaratory judgment or an injunction against the County defendants, and thus we place it to one side for the moment. This brings us to Count II, which seeks a declaratory judgment that Cook County "holds neither a lien nor a claim against RTC Trust or RTC Trust's Property by reason of the Purchased Taxes and other delinquent taxes, and that any attempt by Cook County to sell, garnish upon, levy taxes with respect to, or foreclose on the Property is null and void as a matter of law." Count III we also momentarily set aside, because it may involve the collection of something other than "taxes" and thus fall outside the scope of the TIA for a different reason. Count IV, while cast as a request for a declaration that RTC Trust is entitled to challenge the County Assessor's assessment of the value of the property, in effect seeks a declaration that the assessment was too high and should be re-opened. Thus, we consider Count IV along with Count II below.

■ It seems plain to us that the district court correctly concluded that the TIA bars federal jurisdiction against the Cook County defendants for both Counts II and IV. Count II frankly seeks a declaration that "any attempt by Cook County to sell, garnish upon, levy taxes with respect to, or foreclose on the Property is null and void as a matter of law." Because, as we noted, declaratory judgments are treated the same as injunctions for TIA purposes, see *Grace Brethren Church, supra,* it is difficult to see how Count II could be characterized as anything but an effort to "enjoin, suspend, or restrain the ... levy or collection" of a tax under state law, as § 1341 uses the terms. If RTC Trust wishes to challenge Cook County's decision to attempt to levy real property taxes on property that RTC held at one time, it must present its FIRREA–based arguments to a state court

unless it can show that the Illinois courts are unable to provide a "plain, speedy and efficient remedy" for it. Such a showing would be impossible to make. State courts have concurrent jurisdiction over FIRREA claims, see *Holmes Fin. Associates, Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 569–70 (6th Cir.1994), and they routinely decide such cases. See, e.g., *Twenty First Century Recovery, Ltd. v. Mase*, 279 Ill.App.3d 660, 216 Ill.Dec. 513, 665 N.E.2d 573 (1996).

The same analysis holds for the claims described in Count IV, insofar as RTC Trust is trying to assert them against the County defendants. The TIA expressly covers efforts to interfere with the "assessment" of a tax under state law. While it is true that FIRREA confers a right on RTC to seek a reassessment of the value of real estate in which it has an interest, see 12 U.S.C. § 1825(b)(1), that fact says nothing about which court is entitled to implement that right. RTC Trust argues that FIRREA, as federal legislation enacted later in time than the TIA, implicitly repealed the TIA for purposes of suits brought to enforce § 1825(b) rights. It notes that FIRREA confers federal question jurisdiction on the federal courts, and it urges us to find that there is a strong federal policy in national uniformity in these cases.

■ With respect, we cannot agree. In our view, the approach we took to a similar argument about the relation between the TIA and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, points the way to the resolution of the present case. See *Darne v. State of Wisconsin, Dep't of Revenue*, 137 F.3d 484 (7th Cir.1998). In *Darne*, the plaintiff was challenging a state tax on an early withdrawal she had made from a retirement fund governed by ERISA. Met with an objection to federal jurisdiction under the TIA, she argued that there could be no adequate remedy in state court because ERISA confers exclusive jurisdiction on the federal courts for violations of its terms. She also pointed out that ERISA was enacted long after the TIA. This court was "not willing to infer that Congress, in enacting regulatory legislation as comprehensive as the ERISA statute, 'in-tended impliedly to take the drastic step of carving out an exception to the Tax Injunction Act.'" *Id.* at 489, quoting *Ashton v. Cory*, 780 F.2d 816, 822 (9th Cir.1986). Here too, we have a wide-ranging federal legislative scheme that was designed to bring some order to the chaos the savings and loan industry was experiencing in the late 1980s. Nevertheless, as in *Darne*, there is no indication in FIRREA that Congress intended impliedly to repeal the TIA. Indeed, the indications point more strongly toward acknowledgment of concurrent state power for FIRREA purposes, because Congress did not choose to confer exclusive jurisdiction on the federal courts as it did with ERISA. The Supreme Court has repeatedly emphasized the importance of the policies underlying the TIA, see *Grace Brethren Church*, 457 U.S. at 408–13, 102 S.Ct. 2498; *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Tully*, 429 U.S. at 73, 97 S.Ct. 219. Repeals of federal legislation by implication are disfavored in any event, see *Randall v. B.J. Loftsgaarden*, 478 U.S. 647, 661, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986), and our holding in *Darne* establishes that congressional intent to override the TIA in particular must be clearly expressed. We therefore conclude that both Count II and so much of Count IV as is addressed to the Cook County defendants were correctly dismissed for want of jurisdiction.

### 2. *Phoenix*

■ The most important question with respect to Phoenix is whether it stands in the same shoes as the Cook County defendants for TIA purposes. If the declaratory judgments RTC Trust seeks against Phoenix in Counts I and IV would be the equivalent of an injunction to restrain the county from assessing, levying, or collecting its taxes, then jurisdiction is lacking over these counts as well. This is because the TIA withdraws federal jurisdiction even over actions that would indirectly restrain the assessment, levy, or collection of taxes. See, e.g., *Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327, 328 (9th Cir.1989); *Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 403 (3d Cir.1982). See also *Alcan Aluminium Ltd. v. Dept. of*

*Revenue of the State of Oregon,* 724 F.2d 1294, 1297 (7th Cir.1984) (indicating the importance of adhering to the policies underlying the TIA and the need to avoid a hypertechnical approach to the law). If, on the other hand, the link between Cook County's efforts to operate its real estate taxation system and Phoenix's rights under the tax certificates is too tenuous, then the case against Phoenix might be able to go forward. (We say "might" because other problems would arise if jurisdiction could be asserted only against Phoenix and not against the County defendants, as we explain below.)

The Third Circuit faced a situation similar to this in *Simon v. Cebrick,* 53 F.3d 17 (3d Cir.1995). In that case, the underlying question was whether mortgages held by the Federal Deposit Insurance Corporation (FDIC) could be extinguished without the FDIC's consent, under 12 U.S.C. § 1825(b)(2). A private party, Betty Simon, had purchased the tax title to certain New Jersey real property, and then later she purchased tax lien certificates for three tax years. At the time she bought the certificates, the First National Bank of Toms River held mortgage liens against the same property. The Comptroller of Currency later closed the bank, the FDIC became its receiver, and the mortgage liens passed into its hands. Under New Jersey law, Simon's tax liens were superior in right to the FDIC's mortgage liens. Simon sued in state court to foreclose on her tax liens, and the FDIC removed the case to federal court. On the merits, Simon argued that she had a right to foreclose, and the FDIC took the position that § 1825(b)(2) precluded her from extinguishing its mortgages without its consent.

The Third Circuit recognized that it could not decide the FIRREA issue if the TIA divested the district court of jurisdiction over the action. 53 F.3d at 22. It found its jurisdiction secure, however, with the following explanation:

> We do not necessarily agree with plaintiff that the district court's application of § 1825(b)(2) to protect the mortgage interests of the FDIC violates the TIA because it suspends the collection of taxes under state law until the FDIC consents to fore-

closure of the tax liens. Withholding consent to foreclose from a private citizen does not implicate the assessment, levy, or collection of any tax. The [TIA] is intended to prevent interference with taxation by governmental entities; however, upon the sale of the tax certificate, the tax obligation is satisfied. The holder's inability to foreclose does not affect the governmental entity's ability to assess, levy, or collect any tax, and thus, the TIA is not applicable.

*Id.*

We think the Third Circuit may have underestimated the potential of interference with the state's tax collection efforts in the case before it. Moreover, it is not clear from the reported opinion whether the New Jersey tax collection system involved revocable certificates like the ones Cook County issues. In our case, the contingent nature of the tax certificates is crucial. In essence, Illinois offers certificate purchasers a guarantee against legal flaws in the tax sale, by making available to the purchaser an action in state court for a declaration of a sale in error and by obligating the County Clerk to refund the amount paid for the certificate upon such a declaration. 35 ILCS 200/21–310(b). Presumably, this allows Illinois counties to sell their certificates either for face value or at a discount that represents only the risk of inability to collect, rather than at a larger discount that also represents the risk of legal flaws in the tax deed. We concede that there is a slightly hypothetical tinge to the question whether Phoenix would avail itself of the right to sue for a declaration of a sale in error if this court were to decide that RTC's interests in the property (now in the hands of RTC Trust) could not be extinguished by the tax deed, at least without RTC's consent, see 18 U.S.C. § 1825(b)(2). It is only a tinge, though, and it is hard to see why Phoenix would sit by quietly with certificates whose value would be the residual worth of the property after RTC Trust redeems its own liens, if it had the option of a full refund with interest from the County Clerk.

A slightly different perspective also reveals how closely linked Phoenix's interests are with those of Cook County. We have

456

already found that the TIA poses a flat jurisdictional ban on RTC Trust's efforts to sue the County defendants themselves. Yet suppose suit were possible against Phoenix alone. In the words of Fed.R.Civ.P. 19(a)(2), Cook County is surely a party that "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may ... as a practical matter impair or impede [its] ability to protect that interest." Looking at the factors outlined in Rule 19(b), it seems likely that it would be difficult to lessen the prejudice to the county, or to limit the judgment so as to protect its interests. On the other hand, if the parties turn to state court, as we have already noted, the plaintiff has an adequate remedy available to it. Although no one raised Rule 19 below, we think that the considerations it highlights reveal that Phoenix's interests and the county's are closely intertwined. This is relevant because the TIA prohibits both direct and indirect interference with the state's efforts to assess, levy, and collect its taxes. See *Blangeres*, 872 F.2d at 328; *Sipe*, 689 F.2d at 403.

The strongest argument RTC Trust can muster against a conclusion that the TIA also bars the suit against Phoenix is rooted in the policies and purposes of FIRREA. Congress enacted FIRREA in the face of a national banking crisis, with the intent of maximizing the recovery of assets that the federal receivers (FDIC, RTC) held in the failed banks they inherited. In order to achieve that goal, the statute gave RTC both the special rights and immunities detailed in 12 U.S.C. § 1825(b) and other "super powers," including the right to repudiate preexisting contracts and leases. See generally Wendy Cousins, Note, *RTC's Repudiation of Contracts under FIRREA: A Broad Power To Achieve Broad Legislative Goals*, 44 Fla. L. Rev. 453 (1992). It also empowered RTC to sell the assets of failed financial institutions, thus lowering the government's exposure as insurer. The relation between state-created encumbrances on those assets and RTC's rights under FIRREA is therefore a question of national importance, which RTC Trust argues should not be frustrated. Application of the TIA would do just that, as it would divert a significant amount of this

litigation into the state courts, which might be less sympathetic to the federal system and which might arrive at conflicting interpretations of FIRREA.

While these points are not without force, they cannot overcome the lack of statutory support in FIRREA for such a powerful version of exclusive federal power. We cannot assume that the state courts would apply FIRREA unfaithfully. If state courts have honest differences of opinion about the way that FIRREA should be interpreted, review in the Supreme Court is always a possibility. See 28 U.S.C. § 1257; S.Ct. Rule 10(b).

We conclude, therefore, that the district court correctly dismissed Counts I, II, and IV for want of jurisdiction on the basis of the Tax Injunction Act. Last, we address its disposition of Count III, as to which it reached the merits.

B. Interest and Penalty Claim

Count III seeks a declaration that neither Cook County nor Phoenix has a lien against the property or other claim against RTC Trust for interest, penalties, or other charges associated with the taxes. RTC Trust bases this claim on 12 U.S.C. § 1825(b)(3), which provides that RTC "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due."

RTC Trust argues first that the district court correctly decided that it was entitled to assert RTC's rights under FIRREA for this purpose. It goes on to assert that, while the district court correctly held that no real estate tax penalties could be imposed on the property for the period during which RTC was receiver, the court erred in finding that penalties assessed prior to RTC's receivership had accrued, and finding further that although "[RTC Trust] is not personally liable for interest and penalties for delinquent real estate taxes that accrued while [RTC] was the owner of the property," RTC Trust would nonetheless have to pay accrued interest, penalties, and fines if it redeemed its property interests.

The County defendants, in a footnote to their brief, maintain that the district court should have dismissed Count III for lack of federal jurisdiction, just as it dismissed the other three counts. Illinois law, they argue, treats penalties as taxes for purposes of collection, see 35 ILCS 200/1–145, and thus there is nothing to distinguish Count III from the rest of the case. They also support the district court's decision to dismiss those aspects of Count III that sought to declare the penalty liens void, and the part of the district court's opinion that rejected RTC Trust's claim that it was not "personally" responsible for pre-receivership penalty liens. Phoenix takes issue with RTC Trust's right to stand in the shoes of RTC, and it also adds that RTC itself never held the property that is subject to the penalty liens, because all it ever had was the defaulted notes.

 The first question we must address is the jurisdictional one, of course. The question whether something is a "tax" or not for purposes of the TIA is ultimately one of federal law, even though we consult state law to understand exactly what a particular charge is. See *Reconstruction Finance Corp. v. Beaver County, Pa.,* 328 U.S. 204, 207–10, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); *Federal Reserve Bank of Richmond v. City of Richmond,* 957 F.2d 134, 135 (4th Cir. 1992). Following the decision of the District Court for the Northern District of Texas in *Irving Independent School Dist. v. Packard Properties, Ltd.,* 741 F.Supp. 120 (N.D.Tex. 1990), *aff'd,* 970 F.2d 58 (5th Cir.1992), the district court concluded that the interest and penalties associated with the nonpayment of taxes should not be charactered as a "tax," either for purposes of the TIA or for purposes of § 1825(b)(3). Illinois courts, it found, characterize the impositions charged on delinquent real estate taxes as an interest penalty, or just as a penalty. See *Kousins v. Anderson,* 229 Ill.App.3d 486, 171 Ill.Dec. 275, 593 N.E.2d 1095 (1992). In *Village of Oak Lawn v. Rosewell,* 128 Ill.App.3d 639, 83 Ill.Dec. 904, 471 N.E.2d 203, 207 (1984), the court described these charges as penalties to aid in the administration and collection of taxes, not fees for the purpose of generating revenue.

The County defendants respond that Illinois statutes define taxes for collection purposes as "[a]ny tax, special assessments or costs, interest or penalty imposed upon property," 35 ILCS 200/1–145, and they refer us to cases such as *In re Application of County Collector,* 155 Ill.2d 520, 187 Ill.Dec. 471, 617 N.E.2d 1192 (1993), and *Santiago v. Kusper,* 133 Ill.2d 318, 140 Ill.Dec. 379, 549 N.E.2d 1251 (1990). The latter cases stand for the unstartling proposition that property owners in Illinois must redeem both taxes due and associated interest and penalties, when they have properly been assessed. *In re Application of County Collector,* 187 Ill.Dec. 471, 617 N.E.2d at 1195; *Santiago,* 140 Ill.Dec. 379, 549 N.E.2d at 1254–55.

Even if it is pellucid under Illinois law that all the charges here are "taxes," we must still decide whether they fall within the scope of the TIA. We consider first the interest component of this charge. To the extent that the interest is nothing more than an adjustment for the delay in payment, it logically should be considered as part of the tax itself. If payment had been made in time, this amount would have been zero; later payment just represents what the same sum of money would have been worth if it had been invested at the appropriate interest rate at the time it was due. See *In re Milwaukee Cheese Wisconsin, Inc.,* 112 F.3d 845, 849 (7th Cir.1997); *Reich v. Sea Sprite Boat Co., Inc.,* 64 F.3d 332, 334 (7th Cir.1995).

Penalties stand on a different footing. States do not assess penalties for the purpose of raising revenue; they assess them so that delinquent tax debtors will be deterred the next time around from ignoring their legal obligations. In a Utopian world where all citizens complied fully with their obligations, no penalties at all would be collected. This suggests that the penalty is not a fee calculated to generate revenues, which the county could then use for general purposes; instead, it is a special purpose regulatory device. As such, under our decisions in *Hager v. City of West Peoria,* 84 F.3d 865, 870 (7th Cir.1996), and *Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388, 1399 (7th Cir.1992), the penalty is not a "tax" for TIA

purposes. To the extent, therefore, that Count III raises the question whether RTC Trust is exempt from penalties that attached either before or during RTC's receivership, the TIA does not deprive the court of jurisdiction.

■ Next, we consider whether RTC Trust is entitled on the merits to raise the same claims with respect to penalties that RTC itself could have asserted. Even though, as the district court ruled, RTC Trust was not the equivalent of RTC for purposes of federal question jurisdiction (a ruling with little practical significance here, since diversity jurisdiction was an available alternative), this does not mean the two must be treated as strangers for substantive purposes under the statute. FIRREA not only permits, but encourages—practically begs— the federal receiver to sell or assign interests it acquires from failed institutions to third parties. See *FDIC v. Bledsoe*, 989 F.2d 805, 811 (5th Cir.1993) (noting the importance to FIRREA's statutory scheme of a viable private market for the assets of failed banks). In our view, as RTC's assignee, RTC Trust acquired whatever it was that RTC held at the time of assignment, complete with whatever limitations on encumbrances RTC enjoyed as a result of FIRREA. A contrary holding would seriously undermine the entire system created under FIRREA.

■ With those preliminary questions resolved, we come at last to the district court's only substantive ruling in this case. Its decision that RTC, and hence RTC Trust, may be held liable for pre-receivership penalties is consistent with the Fifth Circuit's ruling in *Irving Independent School Dist. v. Packard Properties*, 970 F.2d 58 (5th Cir.1992). The *Packard* court thought that "[t]he wording of [§ 1825] is inherently prospective in scope.... Congress chose to leave property acquired by the FDIC [RTC's predecessor] in the same condition as the FDIC found it." *Id.* at 61–62. Because the receiver takes the assets as it finds them, complete with encumbrances for taxes, penalties, or anything else, it is not immune from claims to payment for penalties assessed prior to its acquisition of the assets. *Id.*; see also *Matagorda County v. Russell Law*, 19 F.3d 215, 219 (5th Cir.

1994). We agree, and because we find the statutory language to be clear, we have no reason to resort to the statements of agency policy to which RTC Trust directs our attention. See *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir.1995).

RTC Trust also argues that the district court's refusal to declare that it was entitled to redeem the taxes without paying any amounts for interest, fines, or penalties was inconsistent with its decision that § 1825(b)(3) relieves RTC of liability for "any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property ... tax ... when due." As its order on reconsideration clarified, the district court read this to relieve RTC and its successors of *personal* liability for the listed charges, but not to eliminate the liability of the property itself for the charges. We do not find the line the district court drew to be logically inconsistent, although it does necessarily have the effect of reducing the amount the property will fetch upon final sale. Instead, the district court's solution strikes a balance between the state's legitimate interest in penalizing individuals who violate its laws and the risks RTC or its successors must bear in holding assets of failed financial institutions. Property comes into RTC's hands with whatever encumbrances it may have. Under § 1825(b)(2), no new involuntary lien may attach to property once it is in RTC's hands, nor may any other lienholder foreclose on or take the property without RTC's consent. When the property is sold, however, the proceeds realized will go to satisfy any creditors, including the state, in accordance with the priorities recognized by state and federal law. RTC is protected to the extent that it and its successors cannot be required to pay a deficiency judgment for taxes or penalties on the property, under § 1825(b)(3), should the amount realized not be enough to satisfy all creditors. This seems to us a sensible reconciliation of all interests concerned.

We therefore AFFIRM the judgment of the district court dismissing Counts I, II, and IV for want of jurisdiction. As explained here, we also AFFIRM the district court's judgment

on Count III with respect to RTC Trust's liability for penalties.