Russell J. HENDERSON, et al.

v.

Richard L. STALDER, et al.

No. CIV. A. 00-2237.

United States District Court, E.D. Louisiana.

Aug. 27, 2003.

Simon Heller, Brigitte Amiri, Center for Reproductive Law & Policy, New York, NY, William E. Rittenberg, Rittenberg & Samuel, LLC, New Orleans, LA, for plaintiff.

Thomas Scherer Halligan, Roy A. Mongrue, Jr., Louisiana Department of Justice, Baton Rouge, LA, Stephen Alexander Quidd, Louisiana Department of Public Safety & Corrections, Baton Rouge, LA, for defendant.

Stephen M. Crampton, American Family Association Center for Law & Policy, Tupelo, MS, Thomas Mente Benjamin, Lemle & Kelleher, LLP, New Orleans, LA, Deana Palmisano Lejarza, Sessions, Fishman & Nathan, LLP, New Orleans, LA, Heidi K. Abegg, Webster, Chamberlain & Bean, Washington, DC, for movant.

### *ORDER AND REASONS*

DUVAL, District Judge.

Before the Court is "Defendants' Motion, Pursuant to F.R.C.P. Rule 62[1], for Suspension or Stay of Preliminary Injunction" ("Motion for Stay")(Doc. No.68), filed by Richard L. Stalder, Secretary of the Louisiana State Department of Public Safety and Corrections, and John Kennedy, Treasurer of the State of Louisiana (referred to hereafter as "the State"). Having reviewed the pleadings, memoranda and the relevant law, the Court finds no merit in that motion.

Also before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs. As the State has not responded as previously ordered to the motion and as the filing of the Motion to Stay has caused plaintiffs to incur yet more attorneys' fees, the Court will order a new briefing schedule. However, it will first take up the Motion for Stay.

### MOTION FOR STAY

The Court would note at the outset, that this motion contains blatant mischaracterizations of the Court's July 8th ruling and demonstrates an unwillingness on the part of the State to understand the basic construct of the United States Constitution and the Bill of Rights. To imply that this Court has ignored the teachings of the

---

1. Rule 62(c) provides:

 When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. Fed.R.Civ.P. 62(c).

Supreme Court and has somehow manipulated the law, as the State has suggested in its memorandum, is specious at best.[2] This Court is dedicated to preserving the rights of **all** people as defined by the laws of this land; it is not only this Court's duty, but its sacred obligation as set forth in the oath of office that each federal judge takes upon taking up his judicial duties. Indeed, one of the most self-evident rights under the Constitution is the right for people to disagree and to engage in animated dialogue to that end. However, ad hominem attacks have no place in this endeavor and indeed minimize the very basis for the nation's strength-discourse and debate.

It has never been the intention of this Court to arbitrarily deprive citizens of this state of their right to express themselves through their purchasing of specialty license plates. Indeed, all that this Court has held is that the State Legislature cannot arbitrarily **prevent** persons who hold views contrary to the majority in the legislators from exercising the same rights as veterans, conservationists and the like. This Court's July 8th ruling was not issued out of mean-spiritedness or indiscriminate fiat. The Court simply is trying to protect **all citizen's** rights under the First Amendment of the United States Constitution, as is its sworn duty. Any characterization contrary to these tenets is simply untrue and verges on demagoguery which disserves the citizens of this State.

The Supreme Court of the United States has recognized that license plates constitute private speech. *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). As this Court has noted in the instant case:

> In reaching that decision [in the *Maynard* case,] the Supreme Court found that New Hampshire in effect required that the Maynards use their private property as a "mobile billboard" for the State's ideological message or suffer a penalty since an individual would have to have such a plate on his personal property in order to drive. As such, the Court reasoned that "The State 'invades the sphere of intellect and spirit which is the purpose of the First Amendment to our Constitution to preserve from all official control.'" *Id.* at 715, 97 S.Ct. at 1435. The Court continued, "The First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable." *Id.* at 715, 97 S.Ct. at 1436. Thus, the Supreme Court has held that license plates constitute speech for purposes of this analysis.

*Henderson v. Stalder,* 265 F.Supp.2d 699, 713 (E.D.La.2003).

Plainly stated, by creating specialty license plates, the State has created a forum for such speech. As the Court previously analogized, it is as if the State of Louisiana has built a hall in which people are welcome to express their views. However, the legislature has created a test for any group to gain admittance into that hall. In order to be able to speak, (1) a legislator must sponsor a bill authorizing the plate, and (2) that bill must pass by a majority in the legislature. As such, the hall in essence has been turned into a club for

---

**2.** The State wrote, "The reasons for these special prestige license plates have nothing to do with speech or expression, and defendants do not know why this Honorable Court enjoined them." (Memorandum, p. 4, n. 2). If these plates have "nothing to do with speech" why has the State maintained the drumbeat of "Government Speech" with respect to the plates for over two years. This kind of disingenuous posturing is untenable, counter-intuitive and wasteful.

popular groups. The legislature can simply refuse admittance to an unpopular applicant by refusing to sponsor or pass a bill for an unpopular group. The realities of the political process are at play and thus wreak havoc on the First Amendment's application to speech in the hall-that is the license plate. Legislators who are afraid of taking politically unpopular positions, such as being pro-choice, are not willing to stand up for the rights of an individual who is a member of an "unpopular" group, even though that individual has a right under the United States Constitution to enter that hall, or in this case, express themselves in the forum of the license plate which the State has allowed as a place for private expression.

All that is required to rectify this unconstitutional restraint on free speech is for the Louisiana legislature to create a nondiscriminatory method by which groups of citizens may apply for license plates and participate in speaking in the hall. As the Court made reference in its July 8th decision, South Carolina has enacted a statute that permits nonprofit organizations to apply for a license plate promoting their group. In that instance a group must submit proof of the group's nonprofit, tax-exempt status; 400 prepaid applications or a $4000 deposit must be made; camera-ready artwork must be submitted and a marketing plan for the sale of the plate must be approved by the Department of Public Safety. This method provides a way for groups to participate in speaking in the hall without being "popular" and protects the state's need to regulate the licensing of vehicles.

This Court cannot allow the State to create barriers to free speech in the context of a forum. To argue that these specialty license plates constitute "government speech", which is the State's primary basis for preventing "unpopular" groups from participating in the license plate forum, belies the obvious context in which these plates come into existence. Indeed, the hue and cry of persons who have these plates, who want to express their views and are outraged that they may be deprived of that right, demonstrates vividly that these plates are about private speech, not government speech.

One of the most important tenets upon which this country was founded was to balance the rule of the majority and protect the rights of the minority. The federal courts historically have been the place to resolve such issues. As written by John Adams, "Mankind will in time discover that unbridled majorities are as tyrannical and cruel as unlimited despots." David McCullough, *John Adams*, (Simon and Shuster 2001) at 443–44.

The Court will now address the particular arguments lodged by the State.

**Standard to Apply Under Rule 62(c).**

The standard this Court must apply to determine whether such a stay should be granted, as this Court noted the last time the State moved to stay this Court's decision is as follows:

In order to obtain a stay of an injunction pending appeal under Fed.R.Civ.P. 62, the moving party must show: (1) a likelihood of prevailing on the merits on appeal; (2) that it will suffer irreparable injury from the denial of the stay; (3) that other parties will not be substantially harmed; and (4) that granting the stay will serve the public interest. *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir.1992). Additionally "the stay of an equitable order is an extraordinary device which should be granted sparingly." *United States v. State of Louisiana*, 815 F.Supp. 947, 948 (E.D.La.1993) (quoting *United States v. Texas*, 523 F.Supp. 703, 723 (E.D.Tex.1981)).

*Henderson v. Stalder*, 2000 WL 1875987, *1 (E.D.La.2000). The State has suggested that because this Court's decision is subject to *de novo* review, the likelihood of success is greater. It is irrelevant[3] to this Court's analysis that the United State Court of Appeals for the Fifth Circuit will use a *de novo* review standard.

 The State raises the following arguments to persuade this Court to enjoin its decision with respect to the first criteria-likelihood of success on the merits:

(1) that the Court lacked subject matter jurisdiction to adjudicate the matter based on the Tax Injunction Act, 28 U.S.C. § 1341;

(2) that the summary judgment has little likelihood of being affirmed on appeal since certain mixed questions of law and fact were resolved in favor of plaintiff Keeler without any supporting evidence;

(3) that this Court was wrong in finding that plaintiff Keeler had standing to enjoin all the license plates;

(4) that the license plates constitute state speech and as such the Court erred in its application of the law; and

(5) that the Court misapplied the rationale in *Sons of Confederate Veterans, Inc. v. Commissioner of Virginia Dept. of Motor Vehicles*, 288 F.3d 610 (4th Cir.2002).

As to the other three considerations, the State contends that there is irreparable harm because the efficient administration of Louisiana vehicle registration license tax "is being thoroughly disrupted." As to the public interest prong, the State again relies on the applicability of the Tax Injunction Act and again notes the alleged disruption of the efficient administration of

the state's tax system. Finally, the State contends that Keeler will not be harmed because "the injunction enjoins others' speech and gives no relief for her to express her own speech."

The Court will now turn to the first criteria.

## A. LIKELIHOOD OF SUCCESS ON THE MERITS:

### (1) The Tax Injunction Act

The State now claims and briefs the Court properly on the issue that this Court lacks jurisdiction to enjoin the State from issuing specialty license plates based on the Tax Injunction Act, 28 U.S.C. § 1341. Unfortunately, the State neither raised this claim in its opposition to the Motion for Summary Judgment, nor mentioned the issue at oral argument. Instead, this argument was first raised by letter sent a week after oral argument. Nonetheless, the Court as noted in its previous decision finds that the Tax Injunction Act has no application in this matter.

 The Tax Injunction Act states that, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such a state." 28 U.S.C. § 1341. The Fifth Circuit employs a bifurcated analysis in determining whether the Tax Injunction Act bars jurisdiction in a specific case. *See Home Builders Assoc. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). First, the court determines whether the law imposes a tax or merely a regulatory fee. *Id.* The Tax Injunction Act only prevents the court from exercising its jurisdiction if the law imposes a tax.

---

**3.** The State's argument in this regard is puerile. This Court is charged with the responsibility of making the determination of whether

there is a substantial likelihood of success on the merits. The standard of review has absolutely no bearing on this Court's analysis.

*Id.* Second, even if the law imposes a tax, a district court may not exercise jurisdiction if the state court can provide the plaintiffs with a "plain, speedy, and efficient remedy." *Id.*

The line distinguishing a tax from a fee is often a blurry one, but courts use the following guideposts to distinguish one from the other:

the classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Id.* at 1011.

The State argues that this Court made contradictory findings when it stated that the license plates produce revenue, but at the same time it noted that the statutes involved used the word "fee" instead of tax so that the Tax Injunction Act did not apply. The State then stated in its memorandum, "It is submitted that this Honorable Court cannot have it both ways at the same time."[4] Indeed, the Court has not sought to "have it both ways"; the statutes involved the imposition of fees, and no amount of double-speak on the part of the State will change this Court's perception.

To begin, the word "revenue" does not mean exclusively money raised by a tax; fees produce revenue as well. In addition, the State has taken the words of this Court out of context; the full paragraph states and underscores why the statutes

involved are not subject to the Tax Injunction Act:

Under these criteria, looking at the purpose of the prestige license plate scheme in place in Louisiana, it is pellucid that its purpose is likewise to produce revenue while allowing, on special plates authorized for private organizations, for the private expression of various views. Indeed, much of the revenue produced is funneled to the organizations themselves in the Louisiana program. Many of the plates involved require a minimum number of purchasers prior to production demonstrating that what defendants contend is the Government's speech, is only spoken if someone else pays for it. Finally, as noted, a number of Louisiana prestige plates require proof of membership in the organization prior to being able to purchase same-underscoring the personal nature of the message of the plate.

*Henderson v. Stalder,* 265 F.Supp.2d at 716.

Furthermore, a review of the statutory scheme demonstrates the true nature of these statutes. To begin, a Motor Vehicle License Tax is imposed under the Louisiana Constitution art. VII, § 5. The statute that implements that provision is found at La.Rev.Stat. 47:452 entitled, "Designation of tax" which states, "The tax levied in this Chapter shall be known as the Vehicle Registration License Tax." Part II of this Chapter is then entitle "Levy of Registration License Fee or Tax". Section 461 provides, "There shall be paid to the commissioner, for the registration and licensing by the State of Louisiana of all vehicles and motor vehicles, an annual registration

---

4. Again, the language used by the State is offensive and thoroughly unprofessional. The Court would suggest to counsel a more appropriate approach would be "We respectfully suggest that the Court's opinion is inconsistent." The Court does not "want" anything other than to fairly dispense justice and insure the protection of all people's Constitutional rights.

license fee or tax according to the classifications and rate hereinafter set forth." La.Rev.Stat. § 47:461. The appropriate rates for individual trucks and trailers is found at La.Rev.Stat. § 47:462, and the rates for most passenger cars is found at La.Rev.Stat. § 47:463. That statute includes some exemptions. This Court's ruling did not in any way effect or enjoin the collection of revenue under those statutes.

■ This Court's ruling dealt solely with those statutes which concern specialty license plates. The scheme is set out in full in the Court's prior ruling. Using the State's own description of the various specialty license plate statutes and the Court's own review of this hodge-podge of statutes, the Court recognizes a variety of categories of plates characterized by the funds generated. There are, *inter alia*, (1) a group of statutes which exempts the owner from paying the regular registration license tax, or any other fee when obtaining the specialty plate; (2) a group with a special one-time fee in addition to the regular registration license tax which apparently goes into the state general fund; (3) a group with a specialty plates for antique cars with concomitant fees; and (4) a group where the "charge" for the special license plate is the same as the regular motor vehicle registration license fee with no "one-time fee"; and (5) a host of statutes where fees in addition to the actual vehicle tax are assessed for the purpose of raising additional funds for various organizations including State "funds", private charities, and alumni organizations.

As such, the Court has not enjoined the collection of the regular registration license tax. It is only the collection of these additional fees, which are designated as fees, that has been placed on hold. For the most part, these fees are the cost for

these individuals to engage in speech.[5] Moreover, the Louisiana Constitution provides, "The levy of a new tax, an increase in an existing tax, or a repeal of an existing tax exemption shall require the enactment of a law by two-thirds of the elected members of each house of the legislature." La. Const. art. VII, § 2. There is no indication that any of these measures had to be enacted by super-majorities. Furthermore, under the Constitution, bills concerning "the levying or authorizing of a new tax, increasing an existing tax, legislating with regard to tax exemption, exclusions, deductions, reductions, repeal or credits" must occur during even-numbered years. La. Const. art III, § 2(A)(3). A general review of these statutes indicates they were not passed in those years.

The case at bar is not analogous to *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128 (7th Cir.1981). The fees involved there concerned registration fees for trucks used in interstate commerce under the International Registration Plan wherein the plaintiff Schneider who had previously registered its trucks in Wisconsin, registered them in Illinois at a substantial savings. However, Wisconsin found that the Illinois address was in essence a sham and notified Schneider that it was improperly using Illinois as its base and sought $800,000 in fees, even though Schneider had already paid to Illinois about $245,000 in fees for the registration. The Seventh Circuit in that case relied on Wisconsin law to determine whether the registration fee was a tax subject to the Tax Injunction Act. It did not use the traditional test employed in the Fifth Circuit.

Using the criteria in *Home Builders*, this Court has not enjoined the collection

---

5. It is unfortunate that this Court's ruling has affected future exemptions from the regular registration license tax; however, the First

Amendment and the requirements of free speech mandate such action.

of what is truly the vehicle registration tax. Rather, it has stopped the collection of fees which a person voluntarily agrees to pay for the privilege of expressing his views. Indeed, the State in many instances serves as a collection agency for private charities. These fees simply do not sustain the essential flow of revenue to the government; rather, these fees are linked to some regulatory scheme-if not a charitable scheme. While these statutes have been passed by the legislature, they do not appear to have been passed for primarily revenue producing measures from the constitutional analysis above. In addition, these fees cannot in any manner be construed to be for the benefit for the entire community, rather they are for the benefit of those funds and charities that profit from the sale of these plates. Furthermore, it would be the first time in this Court's memory that people have actively pursued and volunteered to be subjected to a tax as those who seek specialty plates would be seen to be doing if the Court accepted the State's position. Thus, there is no likelihood of success on the merits based on the Tax Injunction Act.

■ In *Neinast v. State of Texas*, 217 F.3d 275 (5th Cir.2000), the Fifth Circuit cited *San Juan Cellular Telephone Company v. Public Service Commission*, 967 F.2d 683, 685 (1st Cir.1992) (Brewer, C.J.) for the following description of the difference between a fee and a tax by describing the "distinction as a spectrum with the paradigmatic fee at one end and the paradigmatic tax at the other": "The classic fee is imposed (1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes." *Id.* at 278.

Using the *Neinast* construct, the first factor, whether the charge is imposed by the legislature or an agency, suggests that the charge is a tax because it is imposed by the Louisiana legislature. However, the second factor, on whom the charge is imposed, demonstrates that the charge is a fee. The regular registration license tax remains the same or is waived and exempted with respect to all of the specialty plates. Thus the Court's ruling does not effect the tax that is extracted by the purchase of any specialty license plate. Rather the added charges are imposed on a narrow class of persons-purchasers of specialty license plates, and even more indicative-that charge varies with each license plate. The charge is certainly not assessed against the "community as a whole." Moreover, the charge is not even uniform with respect to the community of specialty license plate purchasers. Finally, to the extent that moneys are then "deposited" into the general fund, if the costs of the specialty license plate programs are paid out of the general highway fund, then charges paid back into the fund do help defray the specialty license plates themselves. To argue otherwise would require that no charges would be fees unless they are funneled into a segregated account. *Neinast* 217 F.3d at 279.

### (2) Questions of Fact

The state contends that there were "certain mixed questions of law and fact that were resolved in favor of plaintiff without any supporting evidence whatsoever." It argues that (1) Keeler's statement contained in the Original Complaint is inadmissible hearsay, (2) that there is no evidence that any license plate received a "sufficient number of orders to be established", (3) that there is no evidence that anyone ever actually put any of these license plates on their private motor vehicles; (4) that there is no "proof" that Louisiana "ever invited private speakers to formulate their own speech for any special prestige license plate" or that "any partic-

**875**

ular organization played any part or role in either the authorization or final publication of any of these enjoined license plates."

To begin, the State never argued that there was an insufficient record upon which the Court could rule on the subject motion. If the State had espoused this belief, there is a mechanism by which it could have required evidence to have been adduced, that is Fed. R. Civ. Pro 56(f) wherein the Court would have granted the parties time to conduct discovery and create the factual underpinnings necessary for the Court to rule on these motions. This procedural request was not raised.

▇▇▇ In addition, only **genuine** questions of material fact can preclude the entry of judgment.[6] The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). For the State to contend that there is a genuine question of whether prestige plates are on cars in Louisiana or whether groups have approached the legislature to obtain plates is patently absurd. The Court takes judicial notice of those facts as such license plates are evident to anyone who drives. Furthermore, to the extent that these "facts" were not relevant for the inquiry required under the law (the number of requests for plates), the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). This argument has no merit. Furthermore, it is unconscionable for the State to raise this argument now when it was given every opportunity to have a full and fair hearing. Finally, the State is put on notice that this argument may well violate Rule 11(b)(4).

**(3) Keeler Does Not Have Standing**

The State in its opposition to the plaintiffs' Motion for Summary Judgment never clearly raised in its written briefing a standing argument as to Keeler. Indeed at page 4 of the state's Opposition to the Motion for Summary Judgment (Doc. 61), the State penned, "Thus, all claims in the Second Amended Complaint must be dismissed, and plaintiff Keeler is only allowed to amend her complaint to challenge the state's overall policy and practice of issuing specialty license plates." Furthermore, the very language cited from the Fifth Circuit's opinion to the Court for this new proposition-that being the Fifth Circuit's finding that the Court's first injunction "merely function[ed] to prevent other motor vehicle drivers from expressing their choose-life point of view" and was the basis for the initial dismissal for lack of standing-was addressed expressly in the Fifth Circuit's final mandate which stated unequivocally:

The court's previous order, entered September 24, 2002, denying appellees' motion to stay the mandate pending petition for writ of certiorari, is hereby VACATED; the mandate issued herein is RECALLED; the court VACATES its order of August 9, 2002 denying appellees' petition for rehearing en banc, and substitutes the following response to appellees' motion for rehearing en banc:

6. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The petition for rehearing en banc is DENIED. The case is remanded to the district court with instructions to dismiss the case for lack of standing unless the plaintiff Keeler amends her petition within a reasonable time to challenge the state's overall policy and practice of issuing specialty license plates. Judge Davis would grant rehearing for reasons stated in his dissent.

(Doc. 54). Thus, the Fifth Circuit has specifically instructed this Court that Keeler has standing with the amendment filed.[7]

### (4) The License Plates Constitute State Speech and as such the Court erred in its Application of the Law

The State regurgitates the exact same arguments it made and this Court specifically rejected concerning the license plates constituting "state speech". This Court thoughtfully analyzed the cases cited for this proposition and rejected these arguments in its decision, *Henderson v. Stalder*, 265 F.Supp.2d at 714–17. The Court is reminded of George Orwell's "double-speak" in *1984*. The State apparently believes that if it continues to state that these license plates constitute state speech, that it will transmogrify into something it simply is not. The State has created a forum and it must allow all groups, popular and unpopular, to speak.

### (5) The Court Misapplied the Rationale in *Sons of Confederate Veterans, Inc. v. Commissioner of Virginia Dept. of Motor Vehicles*, 288 F.3d 610 (4th Cir.2002)

In arguing that this Court "misapplied" the *Sons of Confederate Veterans* case, the State states that "a careful study of the denial of the suggestion for rehearing *en banc* [in that case] reveals a rejection of the kind of judgment entered in this case." (Opposition to Motion for Summary Judgment at 12). However, the State fails to recognize that rehearing was denied by the Fourth Circuit and the unanimous opinion of the three panel court remains the law of the case.

Indeed, the *Sons of Confederate Veterans* clearly stands for the proposition that speech on specialty license plates is private, rather than government speech. Moreover, that case dealt with an even more slippery slope that the instant case. In that case, the Virginia legislature did not prevent the Sons of Confederate Veterans from having a license plate; the legislature had passed an act allowing their production. Instead, in the enabling legislation, the Virginia legislature sought to prevent the group's logo, the Confederate flag which was a cause for concern to the members of the legislature as the Confederate flag is a symbol of slavery to some and certainly a reminder of a most turbulent time in the history of the United States to all-from being used on the license plate. Thus, returning to the Court's metaphor, Virginia sought to impose upon the Sons of the Confederacy, in essence, a dress code, in order to gain admittance into the hall. As such, there was a more nuanced permutation of the private speech versus government speech conundrum present in that case. In the case at bar, to return to the metaphor, no matter how the plaintiffs are dressed, they are not allowed admittance to the hall.

The Court will now address the other three criteria with respect to Rule 62(c) stay.

---

**7.** The State in its oral argument discussion contended that the mandate as written did not mean that there was standing in the event that Keeler filed the amended complaint as instructed. Nonetheless, the Court finds that the clear words of the mandate dictate that there is standing for Keeler.

## B. & C. IRREPARABLE HARM AND PUBLIC INTEREST

■ The only argument made by the State, is that there is irreparable harm to the State and the harm to public interest is based on the State's argument that the "efficient administration of Louisiana's vehicle registration license tax is being disrupted." As the Court has found that the moneys involved for the most part are fees, not taxes, these arguments are without merit.

Interestingly, the State never claims harm from it being prevented from speaking. What had been the leitmotif of its position has vanished. Nonetheless, the Court is painfully aware there is confusion with respect to the effect of this ruling on license plates that have already been issued. The Court stated in its reasons that it was enjoining the future issuing of all such licenses-it did not state, nor did it ever intend to prevent the renewal of any plates already issued. Thus, to the degree that specialty license plates have already been issued to persons, it is not the Court's intention to deprive those persons their voice. Accordingly, to the extent that the State may need to take any action with regard to the renewal or transfer of existing plates, it is not so enjoined.

## D. HARM TO KEELER

■ Finally, the State contends that Keeler will not be harmed because "the injunction enjoins others' speech and gives no relief for her to express her own speech." However, the Fifth Circuit has recognized that loss of First Amendment freedoms, even for minimal periods of time, constitute irreparable injury. *Ingebretsen v. Jackson Public School District,*

88 F.3d 274 (5th Cir.1996), *citing Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). This argument fails as well.

## CONCLUSION

Based on the foregoing, the Court finds that there is no cause to stay the enforcement of its judgment. Accordingly,

**IT IS ORDERED** that Defendants' Motion, Pursuant to F.R.C.P. Rule 62[8], for Suspension or Stay of Preliminary Injunction (Doc. No. 68) is **DENIED.**

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

As noted in its July 8th opinion, pursuant to 42 U.S.C. § 1983, plaintiff is entitled to attorneys' fees. Plaintiffs submitted as ordered on August 8, 2003 its motion for attorneys' fees and costs in which they seek $153,034.91. However, the State was to have replied by August 22, 2003. To date, an opposition to that motion has not been filed. Accordingly,

**IT IS ORDERED** that plaintiffs supplement their motion to include the attorneys' fees and costs incurred because of the Motion to Stay no later than September 5, 2003. The State shall file its opposition to both pleadings no later than September 15, 2003. The failure to file such a pleading will result in the plaintiffs' motion being considered to be unopposed. In the event that either party wishes to have an evidentiary hearing on the matter after briefs are submitted, such a request shall be made by September 22, 2003. Otherwise the mat-

---

8. Rule 62(c) provides:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. Fed.R.Civ.P. 62(c).

ter shall be deemed submitted on the papers.