REVISED JANUARY 12, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-30699
_____

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2005

Charles R. Fulbruge III
Clerk

RUSSELL J HENDERSON; ET AL

                Plaintiffs

DOREEN KEELER; PLANNED PARENTHOOD OF LOUISIANA INC

                Plaintiffs - Appellees

     v.

RICHARD STALDER, Etc; ET AL

                Defendants

RICHARD STALDER, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONS; JOHN KENNEDY, State Treasurer

                Defendants - Appellants

_____
Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans
_____

ON PETITION FOR REHEARING EN BANC

(Opinion 04/13/05, 5 Cir., _____, _____ F.3d _____)

Before JOLLY, JONES, and PRADO, Circuit Judges.

PER CURIAM:

(    )  Treating the Petition for Rehearing En Banc as a Petition
for Panel Rehearing, the Petition for Panel Rehearing is DENIED.
No member of the panel nor judge in regular active service of the
court having requested that the court be polled on Rehearing En
Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for
Rehearing En Banc is DENIED.

( X )  Treating the Petition for Rehearing En Banc as a Petition
for Panel Rehearing, the Petition for Panel Rehearing is DENIED.
The court having been polled at the request of one of the members
of the court and a majority of the judges who are in regular
active service not having voted in favor (FED. R. APP. P. and 5TH
CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

ENTERED FOR THE COURT:

/s/ Edith H. Jones
_____
United States Circuit Judge

DAVIS, Dissenting, joined by CHIEF JUDGE KING, HIGGINBOTHAM, WIENER, BARKSDALE, BENAVIDES, STEWART and DENNIS.

Because it is clear to me that the panel's resolution of this case is wrong, I dissent from the court's refusal to take this case en banc.

I fully understand the panel's desire to avoid deciding a case that implicates anything that touches on abortion. The panel's solution is to call the charge for the specialty license plate a "tax" thus triggering the TIA and divesting the federal courts of jurisdiction to enjoin the specialty license plate program. Because the charge in question is not a tax, we should decide the constitutional issue presented to us.[1]

## I.

## Background

The plaintiffs sued to challenge the Louisiana speciality license plate program as representing unconstitutional viewpoint discrimination. The suit's focus is on the specialty plate with the message "Choose Life". The program for Louisiana specialty license plates is codified at La. R.S. 47:463.6 et seq. There is

---

[1] In the recent Fourth Circuit case <u>Planned Parenthood v. Rose</u>, the panel (Luttig, Michael & Gregory) enjoined the state officials from issuing "Choose Life" license plates in a scheme similar to the one in place in Louisiana. Although each panel member wrote separately and assigned slightly different reasons to support his conclusion, no judge dissented from the central holding, affirming the issuance of the injunction. Also, and more significant to the point under discussion, no judge on the panel suggested that the court had no jurisdiction because the extra flow through charge for the plate was a tax. In fact, there is no mention of the TIA in any of the opinions.

Also, in our case, the state raised this jurisdictional argument in the district court for the first time after we remanded the case to the district court following the initial appeal.

no general provision authorizing the issuance of the plates.[2]

Instead individual statutes authorize each specialty plate by separate legislative act. These statutes have been adopted to benefit and recognize over 100 individual causes and organizations. The individual statutes authorizing these license plates vary as to cost of the plate and how and to whom the proceeds the State receives from the plate are distributed. A Louisiana resident who purchases a "specialty" license plate, generally pays three distinct charges: (1) The charge for the standard license plate based on the value of the vehicle; (2) an additional handling charge (usually $3.50); and (3) the additional pass-through payment ordinarily collected by the state and forwarded to the organization designated as the beneficiary of the particular specialty plate statute. We are only concerned with the third charge. The panel held that this charge is a tax and that the TIA precludes a federal court from entertaining a suit to enjoin collection of this tax. The sole issue, therefore, is whether this flow-through charge is a tax.

## II.

## Is the Extra Charge a Tax?

---

[2] La. R.S. 47:463(3) governs the design of specialty plates. It states that "all special prestige license plates issued in accordance with R.S. 463.6 et seq. shall contain the uniform alpha-numeric series accompanied by a symbol or emblem representing the organization requesting such a plate." This section also establishes one aspect of the fee for the issuance of specialty plates and sets minimum requirements. "All prestige license plates issued after August 15, 1999, shall include a handling charge of three dollars and fifty cents to offset the administrative costs of the department for the issuance of such plates. No prestige plate shall be established after August 15, 1999, until the department has received a minimum of one hundred applications for such plate." La. R.S. 47:463(3).

3

We should first be clear about the nature of the charge the panel calls a tax.

1.   The payments in question are transmitted to the state <u>voluntarily</u> by Louisiana citizens to obtain a specialty license plate displaying the cause or institution close to the purchaser's heart rather than the standard Louisiana license plate.  The entire system is driven by private citizens' desire to obtain recognition on a state license plate for their cause.

2.   Under the Louisiana statutory scheme, the state treasury is generally not the intended beneficiary of the payments.  Rather the state is simply a conduit which passes the funds on to the organization or cause identified on the license plate.

The TIA does not apply, of course, if the state charges in question are not taxes for purposes of the TIA.  Much of the case law and commentary regarding the TIA relates to methods of distinguishing a "regulatory fee" from a "tax".  The classic test relied on by the panel for distinguishing a fee from a tax is stated as follows:

> A classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme.  A classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates.  The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raised money to help defray the agency's regulatory expenses.

4

Home Builder's Ass'n of Miss. Inc. v. City of Madison, Miss., 143 F.3d 1006, 1011 (5th Cir. 1998).  Stated differently, regulatory fees are charges imposed "(1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes."  Neinast v. Texas, 217 F.3d 275, 278 (5th Cir. 2000).

This test is helpful in distinguishing between a regulatory fee and a tax.  But this does not mean that the extra charge for a specialty plate must be one or the other, as the panel assumes. In other words, the panel reasons that the charge is not a regulatory fee so it must be a tax.  The reasons the panel gives in support of its conclusion make it clear that it followed this analysis.  First, the panel relied on the fact that the fees do not fund regulatory entities or serve a regulatory purpose. (Slip op. at 2234).  Addressing the district court's conclusion that the variable charges for specialty plates do not benefit the community at large because they are "linked to some regulatory scheme - if not a charitable scheme", the panel states:

> While these features of the specialty plate program -
> the variations in charges and use of funds collected -
> set it apart from more traditional funding mechanisms,
> however, they do not render the charges equivalent to
> regulatory fees outside the TIA.  The additional
> charges "regulate" nothing; they defray no costs of the
> program itself, as those costs are embodied in the
> separate minimal handling fee.

(Slip op. at 2235).  The panel concludes that because the charges do not "constitute regulatory fees, we are persuaded that the

5

additional charges must be characterized as taxes." Id. In the cases the panel relies on, the courts have narrowed the selection to either a tax or a regulatory fee.  In such a case it makes sense to say because the  charge is not a regulatory fee it is a tax or conversely it is a regulatory fee so it is not a tax.  But it is simply not the law that all payments to the state must be regarded as either taxes or regulatory fees.

Judge Wiggins speaking for the Ninth Circuit in Bidart Bros. v. The California Apple Com'n, 73 F.3d 925 (9th Cir. 1996), made the point that the ultimate question is not whether the charge is a "regulatory fee" but rather whether it is a "tax".  The plaintiff in Bidart Bros. challenged a fee imposed by the defendant commission against all California apple producers of 1/4 cent per pound on all apples produced to  promote the sale of California apples.  The defendant sought to characterize this charge as a tax and moved to dismiss the suit under the TIA.  In response to the Commission's argument that the assessment is a tax because the commission performs no regulatory activities, the court stated:

> Even though distinguishing assessments covered by the TIA from those not covered is often characterized as a determination of whether an assessment is a "tax" or a regulatory "fee," San Juan Cellular, 967 F.2d at 685, the ultimate question remains whether an assessment is a "State tax."

Id. at 933.  So, the relevant question is whether this charge is a tax and if the answer to this question is no, the TIA does not apply regardless of whether the charge is characterized as a

regulatory fee, a charitable donation or something else.

Because no regulatory agency or regulatory scheme is involved in the imposition or collection of the voluntary flow through charges at issue in our case, I agree with the panel that under the Home Builder's analysis, they are not regulatory fees. The Home Builder's test for distinguishing a regulatory fee from a tax is nevertheless very helpful in identifying the attributes of a tax:[3]

(1) a classic tax sustains the essential flow of revenue to the government,[while the classic fee is linked to some regulatory scheme.]

(2) a classic tax is imposed by a state or municipal legislature, [while the classic fee is imposed by an agency upon those it regulates.]

(3) a classic tax is designed to provide a benefit for the entire community,[while the classic fee is designed to raise money to help defray the agency's regulatory expenses.]

The charge at issue here has none of the attributes of a tax set forth in the above test which everyone agrees is controlling. First, the payment in question does not "sustain the essential flow of revenue to the government" because in most cases the funds collected are not retained by the state. Second, the

---

[3]I agree with the panel that federal law controls as to whether a particular charge is a tax under the TIA. It is also clear, however, that federal courts must consult state law to understand the nature of the charge. RTC Commercial v. Phoenix Bond, 169 F.3d 448, 457 (7th Circ. 1999). [Moores 121.42[2][b]] As the district court observed,(and the panel did not challenge) this charge is clearly not regarded as a tax under Louisiana law. See 281 F.Supp.2d @873.

7

charge is not "imposed" by the legislature; because it is entirely optional and voluntary on the part of Louisiana citizens electing to pay the extra charge for a specialty plate. Third, the payment does not provide a "benefit for the entire community" because the fee from most specialty license plates is dedicated entirely to the specific organization or cause identified on the selected license plate.

It is clear to me that if the charge bears none of the indicia of a tax identified by Home Builder's, it is not a tax whatever else we may call it. The panel, erroneously in my view, holds in effect that any payment made to the state is a tax unless it can be characterized as a regulatory fee. This conclusion is inconsistent with the plain language of the TIA, which applies only to divest federal courts of jurisdiction over suits enjoining a tax under state law.

### III.

For the reasons stated above, I dissent from the court's refusal to grant rehearing en banc.

Patrick E. Higginbotham, Circuit Judge, dissenting, joined by Judge Wiener:

I join fully the dissent filed by Judge Davis and add this expression of my disagreement with the premise of the panel's strain to avoid deciding the merits of this case.

The principle of judicial restraint teaches that courts should not decide a case on a constitutional ground when there is an alternative, nonconstitutional ground for decision. Applied in a straightforward fashion, this principle works in a rational tandem with the equally powerful duty of the court to resolve those issues necessary to the decision of a case. The principle of judicial restraint offers no support for the panel's effort to avoid the merits of this case. It did not decide the case on another ground; rather, the effect of the panel's opinion is only to reroute this case to the state courts, an outcome that is sound only if the federal courts are being asked to enjoin a state tax.

Ultimately, it is the Congress that has the power to determine whether this case should be decided by the state courts of Louisiana or the inferior federal courts. The Congress, through the Tax Injunction Act, made that decision, taking the federal hand out of matters of state taxes--matters at the core of state governance. It follows that the panel's "expansive reading" of "tax," with its narrowing of federal jurisdiction,

9

must have been intended by the Congress, a reading that must also lie comfortably with the backdrop of access to federal courts secured by *Ex parte Young*.[4]

Nothing in the text of the statute or its history can be read as a license to avoid constitutional issues by such an elastic reading of "tax."  Without that statutory support, the panel's decision offends *Ex parte Young*.  Congress removed the federal injunctive hand from matters of state taxes by removing federal jurisdiction to enjoin them; Congress did not create a side door for federal judges determined to avoid a constitutional question.    I fear that the panel's opinion has, unwittingly, donned an ill-fitting political jacket that many may erroneously believe is part of our daily wardrobe.  Without that jacket, it is difficult to see Louisiana's license-tag program as a state activity Congress put beyond the injunctive power of the lower federal courts, and we are offered no principled reason for the panel's aggressive run with the statute.  I respectfully disagree with the decision that this case should not be considered by the full court.

---

[4] 209 U.S. 123 (1908).